# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELBORRELLO FINANCIAL )
SERVICES DE LLC, d/b/a UNITED )
CHECK CASHING, )
           )
        Plaintiff, )
        v. )    Civ. A. No. N26C-03-323 MAA
           )
JEFF D'AMBROSIO IMPORTS )
INC., d/b/a JEFF D'AMBROSIO )
CHRYSLER JEEP DODGE, )
           )
        Defendants. )

## ORDER

Before the Court is Defendant Jeff D'Ambrosio Imports, Inc.'s ("Defendant") May 6, 2026 Motion to Vacate the Default Judgment Directed by Plaintiff ("Motion") pursuant to Superior Court Civil Rule 60(b).[1] For the reasons that follow, Defendant's Motion is **DENIED**.

## I.     FACTUAL BACKGROUND

The facts which preceded the filing of the pending motion and response are not in material dispute. On or about January 28, 2026, Tylier Jabree Hawkes Smallwood ("Smallwood") appeared at Defendant's Pennsylvania car dealership and negotiated the sale of a vehicle for $47,500.00. Defendant paid Smallwood with a check. A short time later, Smallwood presented the check to Plaintiff, a

---

[1] Docket Item ("D.I.") 4.

check-cashing business, for payment.  Before paying the check, Plaintiff contacted Defendant and confirmed the check it issued to Smallwood was negotiable and valid.  After confirming same, Plaintiff honored the check, paying Smallwood in cash.[2]

On or about January 30, 2026, Defendant "became aware of irregularities concerning ownership of the subject vehicle sold [by Smallwood], reported those concerns to law enforcement,"[3] and stopped payment on the check it issued to Smallwood (after Plaintiff had honored same).[4]  Plaintiff then initiated this lawsuit to recover the funds Plaintiff provided to Smallwood from Defendant as a result of Defendant's issuance of the stop payment order.

## II.    PROCEDURAL BACKGROUND

On March 16, 2026, Plaintiff Delborrello Financial Services DE, LLC ("Plaintiff") filed a Complaint asserting three claims for relief:  Breach of Drawer's Obligation Under the Delaware Uniform Commercial Code; Promissory Estoppel; and Negligence.

On March 31, 2026, Plaintiff served Defendant a copy of the Complaint upon Defendant through an Affidavit of Non-Resident Service, which was accepted by an

---

[2] D.I. 5, ¶ 1.  A representative of Defendant told Plaintiff the check "was good and payable," and was "not subject to any stop payment order, hold, or restriction." D.I. 1, ¶ 11.
[3]  D.I. 6, ¶ 3.
[4]  *Id.*

2

authorized employee of Defendant's Pennsylvania car dealership.[5] Two days later, on April 2, 2026, Defendant submitted a copy of the lawsuit paperwork to its insurance carrier, Brightline Dealer Advisors ("Brightline").[6]

On May 6, 2026, thirty-six days after the Complaint was filed, Plaintiff filed a Direction for Entry of Default Judgment, which this Court entered.[7]

On May 29, 2026, fifty-nine days after an Answer was due, Defendant received a letter dated April 16, 2026 from Brightline disclaiming coverage on the grounds that the purported damages in Plaintiff's claim did not constitute a "covered loss under D'Ambrosio's liability policy."[8] Defendant also reported that its insurance carrier's delay in sending out the letter "related to an internal review of the coverage determination."[9] Defendant denies receiving any notice of the results of the coverage determination prior to May 29, 2026.[10] Four days later, Defendant became aware that a default judgment was obtained.[11]

On June 23, 2026, Defendant filed a Motion to Vacate the Default Judgment

---

[5] D.I. 3, ¶ 3.
[6] D.I. 6, Ex. A, ¶ 4. Defendant denies having "any contact, or [receiving] documents via mail or electronic transmission, with the Plaintiff or its attorneys from March 31, 2026 through June 1, 2026." D.I. 6, Ex. A, ¶ 8.
[7] D.I. 4.
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 6.
[10] *Id.*
[11] *Id.*, ¶ 7.

("Motion").[12]    In the Motion, Defendant asserts that (1) it can demonstrate "excusable neglect" to vacate the judgment;[13] (2) if the judgment were vacated, the outcome of the litigation may be different than if the judgment were permitted to stand; and (3) Plaintiff would not suffer substantial prejudice if the judgment were vacated.[14]

In support of its argument that excusable neglect is established, Defendant asserts that two days after receipt of the Complaint,[15] it "tendered the defense of this lawsuit to CNA, its liability insurance carrier."[16]  But, as noted *supra*, Defendant's next communication with its insurance carrier was a letter received on May 29, 2026, informing it that coverage was denied.[17]

On July 6, 2026, this Court received Plaintiff's Response in Opposition to Defendant's Motion to Vacate.[18]  According to Plaintiff, Superior Court Civil Rule 12(a) required the Defendant to file an Answer on or before April 20, 2026, and it failed to do so.  Plaintiff argues (a) "Defendant was properly served yet took no action to respond to the Complaint or otherwise protect its own interests for well

---

[12]  D.I. 5.
[13]  *Id.*, ¶¶ 6-7.
[14]  *Id.*, ¶ 5.
[15]  D.I. 6, Ex. A, ¶ 3.
[16]  *Id.*, ¶ 3.  Defendant also notes that even though Plaintiff filed a Direction to Enter Judgment by Default with the Court on May 6, it wasn't until June 2 – nearly an entire month later – that it finally served the judgment on the Defendant.  *Id.*, ¶ 4.
[17]  The letter was apparently dated April 16, 2026.
[18]  D.I. 7.

4

over two weeks past its answer deadline;"[19] (b) Defendant failed to explain why no answer was filed once the claim was tendered; (c) Defendant's reliance on the conduct of its insurer in failing to timely respond back with a coverage determination and representation was misplaced; and (d) Defendant's obligation to respond to the Complaint arose when the Complaint was served, not upon the insurer's decision to accept or reject coverage.[20] As a result, plaintiff contends Defendant cannot demonstrate excusable neglect, and for that reason alone the Court should deny the pending motion. Additionally, based on these facts, the Defendant cannot demonstrate a meritorious defense (i.e., that the result of the proceeding would be different) or that Plaintiff would not be prejudiced if the motion were granted.[21]

On July 10, 2026, Defendant's motion was scheduled to be heard in this Court, but consideration of the motion was deferred pending further review of the parties' written submissions and possible additional oral argument. After review of the parties' written submissions, this matter is being decided without the need for further argument.

## III. DISCUSSION

Superior Court Civil Rule 60(b) provides a procedure by which a party may obtain relief from a judgment or order:

---

[19] D.I. 6, ¶ 10.
[20] *Id.*, ¶ 15.
[21] *Id.*, ¶¶ 22-31.

**(b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a Court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant any relief provided by statute, or to set aside a judgment for fraud upon the Court, or to deal with judgments by confession as provided by law. Writs of coram nobis, coram vobis, and audita querela are abolished, and the procedure for obtaining relief from judgments shall be by motion as prescribed in these Rules or by an independent action.

The grant or denial of a motion to vacate judgment rests within the sound discretion of this Court.[22] Delaware courts favor motions to vacate, when appropriate, as they "promote Delaware's strong judicial policy of deciding cases on the merits and giving the parties to litigation their day in court."[23]

Here, Defendant asserts, *inter alia*, that excusable neglect exists to vacate the default judgment. "Excusable neglect" has been defined as "neglect which might

---

[22] *Mendiola v. State Farm Mutual Auto. Ins. Co.*, 2006 WL 1173898, at *2 (Del. Super. Ct. Apr. 27, 2006) (citing *Battagila v. Wilmington Savings Fund Soc.*, 379 A.2d 1132, 1135 (Del. 1977)).
[23] *Id.* (quoting *Verizon Delaware, Inc. v. Baldwin Line Const. Co., Inc.*, 2004 WL 838610, at *1 (Del. Super. Ct. Apr. 13, 2004)).

have been the act of a reasonably prudent person under the circumstances."[24] This Court described the application of the excusable neglect standard in *McDonald v. S & J Hotel Enterprises, Inc.* as follows:

> A mere showing of negligence or carelessness without a valid reason may be deemed insufficient. All the surrounding circumstances may be considered in determining the issue. Excusable neglect has been described as that neglect which might have been the act of a reasonably prudent person under the circumstances. However, negligence may be so gross as to amount to sheer indifference, to open and vacate judgment upon such excuse would cease to give meaning to the words "excusable neglect."[25]

If a party establishes excusable neglect, there are two additional hurdles they must overcome before this Court will grant a motion to vacate. These are demonstrating (a) the possibility of a meritorious defense, and (b) a showing that a plaintiff will not suffer substantial prejudice if the motion is granted.[26]

Defendant relies, at least in part, on the delay in its insurance carrier's coverage determination to excuse its failure to file a timely answer to the Complaint. A similar argument was raised and ultimately rejected by this Court in *State Farm & Casualty Insurance Co. v. Laborers Eastern Organization Fund.*[27] In *State Farm*, the defendant attempted to demonstrate excusable neglect because the initial lawsuit

---

[24] *Id.* (quoting *Apt. Cmtys. Corp. v. Martinelli*, 859 A.2d 67, 69 (Del. 2004)).
[25] 2002 WL 1978933, at *2 (Del. Super. Ct. Aug. 22, 2002) (internal citations omitted).
[26] *See Mendiola*, 2006 WL 1173898, at *2 (citing *Verizon*, 2004 WL 838610, at *1; *Apt. Cmtys. Corp.*, 859 A.2d at 69-70).
[27] 2009 WL 81290 (Del. Super. Ct. Jan. 13, 2009).

paperwork was erroneously served on defendant's predecessor insurance broker.[28] That predecessor insurer (Conover Beyer) failed to advise defendant that it was not covering the accident.[29] Several months later, the defendant discovered the error and contacted its current insurer, Crum & Foster, who then retained counsel to defend the lawsuit.[30] At that point, default judgment had already been entered against defendant. In rejecting the defendant's claim that excusable neglect was established, this Court observed, "[Defendant] fails to establish why its failure to notify the correct insurance carrier is *excusable* neglect, as opposed to mere neglect. [Defendant] also fails to establish why its failure to follow up with the insurance carrier after initially reporting the accident is excusable neglect as opposed to mere neglect."[31]

As in *State Farm*, I conclude Defendant has failed to establish its threshold requirement that its conduct was that of a reasonably prudent person. While the record reflects Defendant did notify its insurer promptly of its claim when the Complaint was received, Defendant failed to follow up over the next fifty to sixty days to determine if coverage was accepted or declined. In fact, almost two months had passed from the time Defendant advised the insurance carrier of the Complaint,

---

[28] *State Farm*, 2009 WL 81290, at *1.
[29] *Id.*
[30] *Id.*
[31] *Id.* at *2.

8

and the record is devoid of any follow up by Defendant to inquire the status of its claim. Once Defendant received the May 29, 2026 letter from its insurer, another three-plus weeks passed before Defendant sought to vacate the default judgment. Defendant's conduct in failing to follow up with its insurer was unreasonable.

## IV.  CONCLUSION

Because the Court can find that the Defendant's conduct in failing to follow up with its insurer was the result of inexcusable neglect, I need not address whether the Defendant has meritorious defenses and whether the Plaintiff would be prejudiced by an order vacating the default judgment.[32] Wherefore, Defendant's Motion to Vacate Default Judgment is **DENIED**.

/s/ Martin B. O'Connor
Commissioner

Original to Prothonotary

---

[32]  That being said, it is unclear what valid defense(s) Defendant would effectively assert. Defendant purchased a car from an out of state seller without conducting sufficient due diligence or confirmation that the seller possessed valid title to the vehicle at the time of the transaction, and that the vehicle being sold wasn't stolen or the property of someone other than the seller. Then, a day or so later, when the seller presented the check received from Defendant for the transaction, Plaintiff called Defendant to confirm the check was valid *and a representative of Defendant's business expressly stated it was*. It was only then that Plaintiff accepted the check and paid the seller its value, minus processing fees.